# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREDDIE FRANCIS,** | : | No. 3:04cv1694 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **D. SCOTT DODRILL, Regional Director;** | : | |
| **JOSEPH V. SMITH, Warden;** | : | |
| **T.R. SNZIEZK, Assistant Warden;** | : | |
| **BECKY CLAY, Captain,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

Before the court for disposition are a motion for summary judgment filed by Defendants D. Scott Dodrill, Joeseph Smith, T.R. Snziezk, and Barbara Clay, as well as Plaintiff Freddie Francis' cross motions for summary judgment. These matters have been fully briefed and are ripe for disposition. For the following reasons, we will grant the defendants' motion for summary judgment and enter judgment on their behalf.

**I.     Background**

Francis is a federal prisoner incarcerated at the United States Prison at Lewisburg, Pennsylvania ("USP-Lewisburg"). On August 2, 2004, he filed a complaint instituting the present action against D. Scott Dodrill, the Regional Director of the Bureau of Prisons, Joseph Smith, the USP-Lewisburg Warden, T.R. Sniezk, the Assistant Warden, and Captain Becky Clay[1] (collectively "Defendants"). Francis alleges that he was improperly transferred to USP-Lewisburg's Special Management Unit ("SMU"). He was transferred because of his

---

[1] The Complaint identifies her as "Barbara," but he refers to her in her briefs as Becky. We will refer to her as Becky because the defendants note this is her correct name.

involvement with a gang, although he claims he was never involved in gang activity. He was not provided with notice or a hearing prior to his transfer. He claims that the SMU program is run without a proper policy or without congressional authorization. He alleges that his placement in the SMU program violates his Fifth Amendment due process rights, and constitutes cruel and unusual punishment in violation of his Eight Amendment rights.

**II.     Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by

showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

### III.     Discussion

The defendants present three grounds for their motion. First, they argue that Francis fails to produce evidence of their personal involvement in the alleged constitutional violations. Second, they argue that Francis's placement in the SMU does not implicate his due process rights because it is not a punitive unit. Third, they argue that they are entitled to qualified immunity. Francis has filed cross motions for summary judgment. We will grant summary judgment for the defendants on the first two arguments, and thus need not address qualified immunity.

### A.     Personal Involvement

Francis claims that his placement in the SMU violates his constitutional rights under the Cruel and Unusual Punishment Clause and the Due Process Clause. A claim for violations of constitutional rights is actionable pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and is the federal counterpart to 42 U.S.C. § 1983.[2]

---

[2] "Every person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

To state a claim for a violation of the Cruel and Unusual Punishment Clause, a prisoner must demonstrate that "he has been deprived of 'the minimal civilized measure of life's necessities'. . . and that a prison official acted with deliberate indifference in subjecting him to that deprivation." Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997) (quoting Young v. Quinlan, 960 F.2d 351, 359 (1992)).  A violation of the Due Process Clause involves the following three elements: "1) the claimant must be 'deprived' of a protectable interest; 2) that deprivation must be due to some government action; and 3) the deprivation must be without due process." Cospito v. Heckler, 742 F.2d 72, 80 (3d Cir. 1984).   To establish liability under Bivens, a plaintiff must demonstrate that the defendants were personally involved in the deprivation of his rights, and the theory of *respondeat superior* is not a basis for liability.  See Rode v. Dellarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.").[3]

Francis has produced no evidence that Defendants Becky Clay, D. Scott Dodrill, or T.R.

---

by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983.

[3] We recognize Rode involved a suit pursuant to 42 U.S.C. 1983, and to date, no precedent binding on this Court has held that *respondeat superior* liability is unavailable in a Bivens claim.  See Young v. Quinlan, 960 F.2d 351, 358 (3d Cir. 1991) (recognizing that the Supreme Court has not addressed this issue, but noting that "most jurisdictions have decided against the applicability of *respondeat superior* liability in Bivens suits.").  The Third Circuit, however, has established that respondeat superior liability is not available for 42 U.S.C. § 1983 claims, Rode, 845 F.2d at1208, and Bivens claims are merely the federal counterpart of  § 1983 suits, Paton v. La Prade, 524 F.2d 862, 871 (3d. Cir. 1975).  Furthermore, the Supreme Court has recognized that "the Courts of Appeals have unanimously rejected the contention . . . that the doctrine of *respondeat superior*  is available against a municipal entity under a Bivens-type action." Jett v. Dallas Independent School Dist., 491 U.S. 701, 735 (1989).

Snziezck were involved in his placement in the SMU, and instead relies on the doctrine of *respondeat superior*. Francis' exhibits contain no allegations regarding these individual defendants, and his evidence does not reference them in any way. Thus, we find that Francis has not created a genuine issue of material fact that these defendants violated his constitutional rights, and we will grant summary judgment. Francis has, however, submitted a letter from Defendant Warden Joseph Smith, providing that his placement in the SMU would be reevaluated. Thus, he has created a genuine issue of material fact that Smith had sufficient personal involvement in his placement in the SMU, and we will not grant summary judgment for Smith on this ground.[4]

### B. Due Process

The defendants also argue that Francis' placement in the SMU does not implicate his due process rights. We agree. A due process liberty interest "in avoiding particular conditions of confinement may arise from state policies or regulations." Wilkinson v. Austin, 125 S. Ct. 2384, 2393 (2005). The Due Process Clause protects a prisoner's right to "freedom from restraint, which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship in relation to the ordinary incidents of prison life." Id. at 2394 (quoting

---

[4] This evidence is not sufficient, however, to withstand summary judgment on Francis' First Amendment claim. Francis' complaint refers to the First Amendment, but he does not allege nor produce sufficient facts that any defendant was personally involved in retaliating against him for engaging in any First Amendment protected activity. Therefore, we will grant summary judgment on the First Amendment claim for all defendants.

Sandin v. Conner, 515 U.S. 472, 484 (1995)).

The proper focus for determining whether prison conditions give rise to a due process liberty interest is the nature of the conditions, not mandatory language in prison regulations. Sandin, 515 U.S. at 484. In Sandin, an inmate was charged with violating prison regulations. Id. at 475. At a hearing, the hearing committee refused the inmate's request to present witnesses. Id. The committee found the inmate guilty and sentenced him to disciplinary segregation. Id. The inmate sought review, and a deputy administrator found some of the charges unfounded and expunged his disciplinary record. Id. at 476. Thereafter, the inmate filed suit pursuant to 42 U.S.C. § 1983 for a deprivation of procedural due process during the disciplinary hearing. Id. The Tenth Circuit found that he had a protected liberty interest because it interpreted the prison regulations to require that the committee find substantial evidence of misconduct before imposing segregation. Id. at 477. The Supreme Court reversed, finding no liberty interest. Id. at 484. In doing so, it rejected an approach that focused on whether the prison regulation went "beyond issuing mere procedural guidelines and has used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.'" Id. at 480 (quoting Hewitt v. Helms, 459 U.S. 460, 471-72 (1983)). The Court found this approach undesirable because it created a disincentive for prison administrators to codify prison management procedures and because it "led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." Id. at 482. Thus, the Court held liberty interests "will be generally limited to freedom from restraint which, while not exceeding the

sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . .nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.  In applying this test, the Court observed, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Id. at 485.  The Court then found that the inmate's disciplinary segregation "did not present a dramatic departure from the basic condition's of Conner's indeterminate sentence" because the conditions of disciplinary segregation were similar to those faced in administrative and protective custody.  Id. at 486.

In Wilkinson v. Austin, 125 S. Ct. 2384, 2393 (2005) the Court applied the Sandin test and found that the plaintiff's due process rights were implicated when he was placed in a program where:

> almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. . . .[P]lacement . . .is indefinite and, after an initial 30 day review, is reviewed just annually. . . .[P]lacement disqualifies an otherwise eligible inmate for parole consideration.

Id. at 2394-95.

The court found that these harsh conditions "give rise to a liberty interest in their avoidance." Id. at 2395.

Fraise v. Terhune, 283 F.3d 506 (3d Cir. 2002) applied the Sandin test and found that avoiding placement in the Security Threat Group Management Unit (STGMU) in the New Jersey prison system is not a protected liberty interest.  Inmates who the prison deemed

7

members of groups that posed a security threat were placed in the STGMU. Id. at 509. "An inmate assigned to the STGMU remains in maximum custody until the inmate successfully completes a three-phase behavior modification program." Id. at 511. The Court found that despite the additional restrictions, prisoners have no liberty interest in avoiding placement in the STGmU. Id.; see also Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (finding that additional restrictions in administrative custody for a period of fifteen months does not deprive prisoners of protected liberty interests).

We find that the conditions in the SMU do not remotely approach the severity of the conditions Wilkinson found to give rise to a protected liberty interest, and are comparable to the conditions in cases such as Sandin, Fraise, and Griffin, which found no protected liberty interest. The SMU program is "designed to teach inmates self-discipline, prosocial values, and to facilitate [inmates'] ability to successfully coexist with members of other geographical, cultural, and religious backgrounds." (Def. Ex. 2, SMU Inmate Handbook at 1). If inmates follow the program, they will complete it in twelve to eighteen months. (Id.). As they progress through the program, their restrictions decrease until they return to the general population. (Id.). Failure to comply with the program results in greater restrictions and increased duration of the program. (Id.). Inmates are restricted to one telephone call per thirty days, and may be visited by members of their immediate family only. (Id. at 2). They may shower three times per week and are issued razors when they shower. (Id. at 3). They are permitted hygenie items and supplies such as toothbrushes, toilet paper, writing paper, and pencils, which are issued by the custody staff. (Id.). Prisoners are issued three pairs of boxer shorts, three t-shirts, two

towels, three pairs of socks, two sheets, one pillowcase, one blanket, and a mattress. (Id.). They are limited to one haircut per month. (Id.). Inmates are allowed five hours of recreation per week, which they do with a partner. (Id. at 4). They may retain legal materials so long as they fit within one cubic foot. (Id.). They also may retain basic educational materials. (Id. at 4-5). Every twenty-one days the prisoners are moved to a new cell. (Id. at 5). Significantly, the disciplinary system in the SMU is nearly identical to that of the rest of the prison system. The disciplinary system for the entire Bureau of Prisons contains the same categories of offenses, the same prohibited acts, the same punishments, and the same procedures as those in the SMU. Compare Id. at 5-18, with 28 C.F.R. § 541.13-19.

Francis submits evidence that inmates in his block are permitted to shower only three days per week whereas other inmates shower every day. (Pl. Ex. 4, Francis Decl. ¶ 3). He also provides that he is permitted to go to the commissary only every other week, whereas other inmates go every week. (Id.). Inmates in his block are placed in restraints whenever outside of their cells, whether they are showering, going for recreation, or going to the health services department. (Id.). Francis confirms that inmates who refuse to cooperate remain in administrative custody for longer periods of time and receive increased restrictions and decreased privileges. (Id.). He has produced no other evidence regarding adverse conditions in the SMU. Furthermore, he has produced no evidence nor even argued that his transfer to the SMU somehow resulted in a loss of good conduct time credits or otherwise altered his sentence.

We find that the restrictions in the SMU are no greater than those in Griffin, 112 F.3d

at 708, which the court found unextraordinary. Like the SMU, the "RHU" inmates in <u>Griffin</u> were restricted to three showers, three shaves, and five hours of recreation per week. <u>Id.</u> at 707. They were allowed to retain legal materials so long as they fit in a records box and one religious text. <u>Id.</u> They were provided with a jumpsuit, footwear, and basic toiletries. <u>Id.</u> Other than these items, they were prohibited from possessing property. <u>Id.</u> The duration and restrictions of the program were adjusted based on the inmates behavior and cooperation. <u>Id.</u> We find these conditions entirely consistent with the conditions in the SMU.[5]

Inmates have no due process right to a facility of their choosing. <u>Young v. Quinlan</u>, 960 F.2d 351, 358 n.16 (3d Cir. 1992). The Bureau of Prisons retains sole discretion over where to place an inmate. 18 U.S.C. §3621. Inmates do, however, have a liberty interest in avoiding transfer to facilities where the conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484. This is not such a transfer. We find that these conditions and the conditions overall in the SMU are reasonable and proportionate to those in other prisons in the federal system and across the country, and do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Using restrictions to promote prosocial behavior falls within the parameters of a sentence imposed by a court of law. While Francis clearly would prefer not to be housed in the SMU, his preference is not a liberty interest protected by the Due Process

---

[5] We also find that these conditions do not constitute cruel and unusual punishment. A prisoner suffers cruel and unusual punishment if "he has been deprived of 'the minimal civilized measure of life's necessities'. . . and . . . a prison official acted with deliberate indifference in subjecting him to that deprivation." <u>Griffin v. Vaughn</u>, 112 F.3d 703, 709 (3d Cir. 1997). The SMU clearly provides the minimum civilized measure of life's necessities.

Clause. Accordingly, we find no genuine issue of material fact that Francis has no liberty interest in avoiding placement in the SMU, and we will grant summary judgment for the defendants. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREDDIE FRANCIS,** | : | No. 3:04cv1694 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **D. SCOTT DODRILL, Regional Director;** | : | |
| **JOSEPH V. SMITH, Warden;** | : | |
| **T.R. SNZIEZK, Assistant Warden;** | : | |
| **BECKY CLAY, Captain,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### ORDER

**AND NOW**, to wit, this 12th day of September 2005, Defendants' motion for summary judgment (Doc. 20) is hereby **GRANTED** and Plaintiff's motions for summary judgment (Doc. 24, 26) are hereby **DENIED**. The Clerk of Courts is hereby directed to enter judgment on behalf of the defendants and to close this case in this district.

                                         **BY THE COURT:**

                                         **s/ James M. Munley**
                                         **JUDGE JAMES M. MUNLEY**
                                         **United States District Court**